**Exhibit D**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD )
O'MALLEY, KEN LAMBERT, GERARD SCARANO, )
H. J. BRAMLETT, EUGENE GEORGE, PAUL )
SONGER, CHARLES VELARDO, MATTHEW )
AQUILINE, GREGORY R. HESS, MICHAEL )
SCHMERBECK, VINCENT DELAZZERO, and BEN )
CAPP, JR., as Trustees of, and on behalf of, the )
BRICKLAYERS & TROWEL TRADES )
INTERNATIONAL PENSION FUND, )
  1776 Eye Street, NW, Fifth Floor )
  Washington, DC  20006 )
  (202) 783-3788, )
)
BRICKLAYERS AND ALLIED CRAFTWORKERS )
INTERNATIONAL HEALTH FUND )
  1776 Eye Street, NW, Fifth Floor )
  Washington, DC 20006 )    CASE NUMBER   1:05CV02107
  (202) 783-3788, )
)    JUDGE: Henry H. Kennedy
INTERNATIONAL MASONRY INSTITUTE )
  1776 Eye Street, NW, Fifth Floor )    DECK TYPE: Labor/ERISA (non-employment)
  Washington, DC  20006 )    DATE STAMP: 10/27/2005
  (202) 783-3788, )
    and )
)
INTERNATIONAL UNION OF BRICKLAYERS AND )
ALLIED CRAFTWORKERS )
  1776 Eye Street, NW, Fifth Floor )
  Washington, DC  20006 )
  (202) 783-3788, )
)  Civil Action No.
    Plaintiffs, )
)
    v. )
)
TEMPLETON MASONRY COMPANY, INC. )
  150 W Chance Road )
  Lumberton, TX  77657-7104, )
)
    Defendant. )
)

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP, complaining of the Defendant, allege as follows:

## CAUSE OF ACTION

### Jurisdiction and Venue

1.      This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF"), the fiduciaries of the Bricklayers and Allied Craftworkers International Health Fund ("IHF"), and the fiduciaries of the International Masonry Institute ("IMI"), to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI and the provisions of Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1145.  This action arises under the laws of the United States, specifically Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).   Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court. As to the claims brought by the International Union of Bricklayers and Allied Craftworkers ("BAC"), jurisdiction is conferred under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

2.      The IPF, IHF, and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF, IHF, and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

DSMDB.1981153.1

3.   BAC maintains its principle office in the District of Columbia.  Venue for the claims asserted by the BAC is therefore conferred on this Court pursuant to 29 U.S.C. § 185(c)(1).

### Parties

4.     Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Ben Capp, Jr., are Trustees of, and sue on behalf of, the IPF.  The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).   Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

5.     The IPF is also authorized to effect collections on behalf of the IHF, IMI and BAC, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

6.     Plaintiff, IHF, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

7.     Plaintiff, IMI, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

DSMDB.1981153.1

8.    Plaintiff, BAC, an unincorporated association, is a labor organization within the meaning of 29 U.S.C. § 152(5) and is entitled to bring suit under 29 U.S.C. § 185.

9.    Defendant, Templeton Masonry Company, Inc., is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Texas.

10.    Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

11.    Templeton Masonry Company, Inc., acting through its authorized agent or officer, executed a collective bargaining agreement with the Union.  That collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement".

12.    Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF, IHF, IMI, and BAC on behalf of covered employees of Defendant.

13.    Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

14.    An examination of Defendant's books and records ("audit") performed by the independent accounting firm of Calibre CPA Group PLLC, covering the time period January 2002 through December 2004, revealed that Defendant failed to properly submit required reports and contributions for work performed during this time period.

DSMDB.1981153.1

15.     The total of contributions due the IPF, IHF and IMI by Defendant for work performed during the months of January 2002 through December 2004 as determined by the audit, amounts to $36,070.37.

16.     Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF, and IMI, interest in the amount of $9,516.59 and an additional computation of interest in the amount of $9,516.59, calculated from the Due Date at the rate of 15 percent per annum as provided for by ERISA, have been assessed on the delinquent contributions payable to the IPF, IHF and IMI for work performed by Defendant's employees during the time period January 2002 through December 2004.

17.     Defendant also owes the BAC delinquent dues checkoff moneys in the amount of $1,818.86, and interest in the amount of $495.24, for work performed by Defendant's employees during the time period January 2002 through December 2004.

18.     To date the delinquent contributions, dues checkoff, interest, and additional computation of interest due and owing have not been paid.

19.     Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $59,300.53, which is constituted as follows:

a. For delinquent contributions in the amount of $36,070.37 payable to the IPF, IHF, and IMI for the time period January 2002 through December 2004 (ERISA Section 502(g)(2)(A); Collection Procedures);

b. For interest in the amount of $9,516.59 assessed on such delinquent contributions, calculated at 15 percent per annum from the Date Due (ERISA Section 502(g)(2)(B); Collection Procedures);

c. For an additional computation of interest in the amount of $9,516.59 assessed on delinquent contributions owed to the IPF, IHF, and IMI (ERISA Section 502(g)(2)(C)(i); Collection Procedures);

d. For dues checkoff moneys owed to the BAC in the amount of $1,818.86 (29 U.S.C. § 185; Collection Procedures);

e. For interest in the amount of $495.24 on such delinquent dues checkoff moneys (29 U.S.C. § 185; Collection Procedures);

f. For the costs of filing this action in the amount of $250.00 (ERISA Section 502(g)(2)(D));

g. For the costs of conducting the audit in the amount of $1,632.88 (ERISA Section 502(g)(2)(D)).

2. In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3. That Defendant be directed to comply with its obligations to correctly report and to contribute to the IPF, IHF, IMI, and BAC all additional reports and contributions due and owing, and to pay the costs and disbursements of this action.

4. Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: October 27, 2005

By: _____

Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO MORIN
    & OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 828-2234

Attorneys for Plaintiffs

7

EXHIBIT A

Commercial MTX 0340

# INTERNATIONAL UNION BRICKLAYERS & ALLIED CRAFTWORKERS
# *LOCAL UNION No. 01*
## *TEXAS ▪ LOUISIANA ▪ NEW MEXICO*



# *COLLECTIVE BARGAINING AGREEMENT*



RECEIVED
JUL 9 2003
COLLECTIVE BARGAINING SERVICES

RTX 0360

# TABLE OF CONTENTS

PREAMBLE ...........................................................................................................

ARTICLE I (DURATION – TERMINATION – AMENDMENT) ...................................... 03

ARTICLE II (SCOPE OF WORK) ............................................................................... 03

ARTICLE III (UNION RECOGNITION, UNION SECURITY & ACCESS) ..................... 03

ARTICLE IV (CLASSIFICATION)............................................................................... 03-04

ARTICLE V (APPRENTICES) ..................................................................................... 04

ARTICLE VI (STEWARDS) .......................................................................................... 04

ARTICLE VII (HIRING PREFERENCE) ....................................................................... 04-05

ARTICLE VIII (WAGES / DUES AND BACPAC CHECK OFF) .................................... 05

ARTICLE IX (JOINTLY TRUSTED FUNDS).................................................................. 05-06

ARTICLE X (WORKING CONDITIONS) ...................................................................... 06-08

        SECTION 1. - REPORTING TIME ................................................................. 08-12

        SECTION 2 - HOURS OF WORK .................................................................. 08

          A.    NORMAL WORK HOURS AND MAKE UP DAYS... ...................... 08-10

          B.    SHIFT WORK HOURS ................................................................... 08-09

        SECTION 3 - OVERTIME. ............................................................................... 09-10

        SECTION 4 - HOLIDAYS ................................................................................ 10

        SECTION 5 - PAY DAY ................................................................................... 10

        SECTION 6 - SAFETY, HEALTH, & SUBSTANCE IMPAIRMENT ................... 10-11

        SECTION 7 - USE OF SCAFFOLDS .............................................................. 11

        SECTION 8 - USE OF LINES .......................................................................... 11

        SECTION 9 - GENERAL PROVISIONS & PROHIBITIONS ............................. 11

ARTICLE XI (SUBCONTRACTING) ............................................................................ 11-12

ARTICLE XII (GRIEVANCE PROCEDURES) ............................................................... 12

ARTICLE XIII (TRAVELING CONTRACTORS) ............................................................ 12-13

ARTICLE XIV (NO STRIKE / NO LOCKOUT) .............................................................. 13

ARTICLE XV (SEPARABILITY AND SAVINGS PROVISIONS)...................................... 13

ARTICLE XVI (MOST FAVORED NATIONS).................................................................. 13

ARTICLE XVII (HARMONY AND COOPERATION)........................................................ 13

ARTICLE XVIII (HOURLY RATES, INSURANCE, PAYROLL DEDUCTIONS................... 14

ARTICLE XVI (GENERAL UNDERSTANDING)............................................................. 14

        SCHEDULE "A" ............................................................................................. 14

        SCHEDULE "B" .............................................................................................. 15

        ZONE 1 – AMARILLO AND LUBBOCK, TEXAS ............................................ 15

        ZONE 2 – WICHITA FALLS, TEXAS ............................................................. 16

        ZONE 3 – ABILENE AND WACO, TEXAS ..................................................... 17

        ZONE 4 – AUSTIN, TEXAS............................................................................ 18

        ZONE 5 – SAN ANTONIO, TEXAS ................................................................ 19

        ZONE 6 – CORPUS CHRISTI, TEXAS .......................................................... 20

        ZONE 7 – HOUSTON AND GALVESTON, TEXAS ........................................ 21

        ZONE 8 – BEAUMONT, TEXAS ..................................................................... 22

        ZONE 9 – DALLAS AND FORT WORTH, TEXAS .......................................... 23

        ZONE 10 – LONGVIEW, TEXAS .................................................................... 24

        ZONE 11 – SHREVEPORT, LOUISIANA ....................................................... 25

        ZONE 12 – LAKE CHARLES, LOUISIANA .................................................... 26

        ZONE 13 – BATON ROUGE, NEW IBERIA and BOGALUSA, LOUISIANA ... 27

        ZONE 14 – NEW ORLEANS, LOUISIANA ...................................................... 28

        ZONE 15- NEW MEXICO ................................................................................ 29

SIGNATURE PAGE ..................................................................................................... 30

                                                          31

## PREAMBLE

To foster the principles of collective bargaining,  to promote closer working relationships between employers and employees engaged in the masonry industry, to provide a peaceful means for the settlement of grievances and disputes, to eliminate the necessity for strikes and lockouts, to promote safe working sites, to develop uniform working conditions for this specialized segment of the construction industry, and to establish rates of wages, hours and conditions of employment, we the undersigned Officers of the Bricklayers and Allied Craft workers Local #01 Texas, Louisiana, and New Mexico (hereinafter referred to as "UNION"), hereby enter into the following Agreement with all Contractor Associations and Independent Contractors  (hereinafter referred to as  "EMPLOYER").

All Associations agrees to furnish to the Union a list of all members of the Association denoting those members bound to the terms of this Agreement, the honorary members, independent members, and any other classes or groups of members.

## ARTICLE I
### DURATION - TERMINATION - AMENDMENT

**A.**        This agreement shall become effective in its entirety as of the date of execution and shall continue in full force and effect until midnight, April 30, 2006.

**B.**        This agreement shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new agreement, in whole or in part, is given by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter.  If the parties fail to reach an agreement in such negotiations, the issues in dispute shall be submitted to the International Masonry Institute's Dispute Settlement Plan for such steps as are deemed appropriate in accordance with the procedures of the Plan.

**C.**        The parties may at any time mutually agree to change or amend any part of this agreement and such changes or modifications shall not affect the continuing nature of this Agreement.  This Agreement, when executed, shall be deemed to define the rates of wages, hours, working rules and other conditions of employment and no new or additional issues shall be the subject of negotiations during the term of this Agreement except as provided for herein or by mutual consent of the parties to this Agreement.

## ARTICLE II
### SCOPE OF WORK

**A.**        This Agreement shall cover new construction, maintenance, repair and renovation for all counties and parishes within the States of Texas, Louisiana and New Mexico.  The territorial jurisdiction listed by counties and parishes are referred to as ZONES within this Agreement and are set forth in **Schedule A.**

**B.**        This Agreement shall cover all brick masonry, stone masonry, artificial masonry and special categories of Masonry on Commercial work falling within the jurisdiction of the Union, as defined in Branches of the Trade, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers which is incorporated herein by reference.

**C.**        In addition, all other assignments mutually agreed upon between the employer and the union on any other building products or systems related to the scope and type of work covered by this agreement which may be developed in the future that are determined by these parties to fall within the work jurisdiction of this agreement.

## ARTICLE III
### UNION RECOGNITION UNION SECURITY & ACCESS

**A.**        Inasmuch as (1) the Union has requested recognition as the majority, Section 9(a), representative of the Employees in the bargaining unit described herein and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents a majority of the bargaining unit Employees, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union.

**(New Mexico Only)**

**B.**        No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their Employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended.  Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employee; provided that the Union has given the employee four (4) days notice that the employee's obligation to make payment has not been met and that the delinquency renders the employee liable to termination under this section.  The Employer shall not be obligated to dismiss an employee for non-membership in the Union: (a) if the employer has reasonable grounds for believing that such membership was not available on the same terms and

DTX 0360

conditions generally applicable to other members; or (b) If the employer has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

**(Texas and Louisiana Only)**

C.     Employees working in any state which prohibits the execution or application of Agreements requiring membership in a labor organization as a condition of employment have the right to join or refrain from joining the Union. Employees who decide not to join the Union, however, and who are covered by this Agreement shall, as a condition of employment, be required to pay a monthly service fee to the Union. The service fee shall be the employees' prorated share of costs of collective bargaining and the handling of grievances and arbitrations.

No later than eight (8) days following the date of this Agreement or no later than eight (8) days following the date of commencement of employment by an employee, whichever is later, regular tendering of the service fee shall be a condition of employment, subject to the rights of employees and obligations of parties under the law.

# ARTICLE IV
## CLASSIFICATIONS

A.     **General Foreman and Foreman** - any person directing employees covered under this agreement shall be a journeyman practical mechanic in the branch of trade over which they exercise supervision and shall be classified as general foreman or foreman.
The selection and appointment of general foreman and foreman shall be the responsibility of the employer.
1.)     On jobs employing two (2) or more foreman, one shall be classified as the general foreman.
2.)     The foreman and/or general foreman shall have full and complete authority over all personnel working under him.
3.)     General Foreman and Foreman - Shall be paid in accordance to Schedule B of this Agreement.
B.     **Journeyman** - a practical, skilled mechanic in his or her trade or craft.
C.     **Apprentice** - a person duly registered in the apprentice training program for his or her trade or craft.

# ARTICLE V
## APPRENTICES

In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or improver apprentices is recognized and encouraged by the parties to this Agreement. It is agreed that the apprenticeship standards adopted by the local Joint Apprenticeship and Training Committee are incorporated herein by reference as if fully set out. The local Joint Apprenticeship Committee is empowered to adopt rules and regulations and to determine ratios of apprentices to journeymen. Advancement of an apprentice to the next higher pay classification shall be selected and certified by the Joint Apprenticeship Committee, and the apprentice shall be indentured to the apprenticeship committee. If the Joint Apprenticeship and Training Committee has not adopted local standards, then the National Apprenticeship Standards shall be incorporated herein by reference as if fully set out.

## TERM OF APPRENTICESHIP

The length of time served and the percentage of applicable journeyman base wage rates for all apprenticeship classifications established by the Joint Apprenticeship Committees are as follows:

| | | | |
|---|---|---|---|
| 1st | 6 month period = | 45% | No Fringe Benefits |
| 2nd | 6 month period = | 50% | All Benefits Except Pension |
| 3rd | 6 month period = | 60% | All Benefits |
| 4th | 6 month period = | 70% | All Benefits |
| 5th | 6 month period = | 80% | All Benefits |
| 6th | 6 month period = | 85% | All Benefits |
| 7th | 6 month period = | 90% | All Benefits |
| 8th | 6 month period = | 95% | All Benefits |

Apprentices attending the twelve (12) week Pre-Apprenticeship Class Begin @ 60%.
The applicable journeyperson base wage rates are outlined within each **ZONE** under **Schedule A**.
All 60 – 70% apprentices will be allowed to lay masonry materials, a minimum of 15 hours per week. All 80% - 85% apprentices will be allowed to lay masonry materials a minimum of 20 hours per week. All 90% -95% apprentices should constantly be laying masonry materials.

# ARTICLE VI
## STEWARDS

A.     The employer shall work a steward appointed by a Field Representative or the appointed Chief Steward who shall have talked with the President / Secretary-Treasurer of the Union. The Contractor shall be notified of the steward appointed in writing.
B.     The job steward shall be permitted on the job at all times; shall be a working employee and granted reasonable time to conduct union business; and shall not be subject to discharge on account of Union activities. These activities shall not unreasonably interfere with his work for the Contractor.

C.    The steward shall remain on the job as long as there is work that he is qualified to perform. In the event of a job shutdown, the steward will be the first employee excluding supervisory personnel to be called to the job when it is restarted. The job, steward, in the performance of his duties, shall be the last man on the job, other than the foreman.

D.    The Contractor shall give the Union written notice, when discharging a steward because the project/job has finished. Should an employer determine to lay off or discharge a job steward for just because they shall notify the Field Representative or union office at least four (4) hours prior to their proposed action. The Field Representative shall immediately investigate the matter and notify the employer of their decision regarding such a termination at that time. If the parties are unable to reach an agreement the employer's proposed action shall be submitted, within forty-eight (48) hours, to the Grievance Procedures described in Article XI of this agreement.

E.    The steward's duties include, but not necessarily to the following:

- Work with the Contractor's designated representative in charge of the job in an attempt to resolve disputes prior to the application of the grievance procedure. If the steward is unable to promptly resolve a problem at the job site, the steward shall contact a Field Representative and / or the President / Secretary – Treasurer of the union as soon as possible.

- Report to a Field Representative and / or the President / Secretary --Treasurer any work assignments falling within the jurisdiction of this union. Any B.A.C. collective bargaining agreement being performed by non-union workers, or by another craft, another trade union, labor organizing. If these problems persist, contact your union immediately.

1.)    Report to the Field Representative and the President / Secretary-Treasurer any grievances that have not been resolved under step 1 of the Grievance Procedure.

2.)    Report to the Contractor's designated representative or the Field Representative or President / Secretary-Treasurer reckless or unsafe conditions on the job site.

3.)    In case of injury to an employee, the steward shall care for the injured employee's belongings. To assist any injured member in receiving proper and immediate care. Upon approval of the employer, the steward will accompany any seriously injured or sick BAC member to the clinic or hospital. The steward shall be paid for any lost time in so doing on the day of injury or illness.

4.)    The steward will suffer no loss time in the performance of his duties as outlined or in the securing of a weekly report.

F.    The steward will not cause or encourage a work stoppage, and will not encourage or cause any employee to leave a job, or discourage any employee from reporting for work. Violation of this paragraph shall constitute just cause for discharge.

# ARTICLE VII
## HIRING PREFERENCE

Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the employer, when engaged in any construction work within the geographic area covered by this agreement, shall, in hiring employees covered by this agreement, give preference to persons residing or normally employed within each geographic zone covered by this agreement. Layoffs shall be in reverse order of hire, except when it is necessary to retain employees with certain skills in order to complete the project.
In order to economically and efficiently serve the building public, it is important to have experienced, skilled craftworkers. Employers recognize the Union as the source of skilled manpower and will, therefore, use it as the source when in need of employees. The Union agrees that when Employers request employees, the Union will make its best effort to provide skilled craftworkers within a forty-eight (48) consecutive hour period. If the Union is unable to provide skilled craftworkers the employer will be free to hire any source available. The Union agrees that Employers have the right to establish the standards to be used in hiring employees covered by this Agreement and that the Employer shall be the sole judge of any applicant's qualification without regards to race, color, creed, sex, or national origin. In order to facilitate the collection of the contributions to the Trust Funds, the Employer shall notify the Union when commencing work on any project in the area of this Agreement.

# ARTICLE VIII
## WAGES / DUES and BACPAC CHECKOFF

A.    The dues check-off deductions, basic hourly wage rates and fringe benefits contributions for all employees performing work covered under this agreement are set forth in **Schedule A** and cover a specific territorial jurisdiction listed by counties or parishes which are referred to as **ZONES**.

B.    The employer shall deduct from wages of each employee who has signed a check-off authorization conforming to federal law, and transmit monthly to the Union (or to any agency designated by said Union for the collection of such money) the sum for each hour paid which the Union has indicated in **Schedule A** or specifies from time to time and so advises the employer in writing, as the portion of each employee's union dues or check-off to its International Union, or to any other affiliate of the International Union, subject to check-off. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

5

PTX 0360

**C.**        The employer agrees to deduct an amount from the pay of each employee, who is a union member and who executes a voluntary check-off authorization form for the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC). Deductions shall be in the amount and at the intervals specified on the check-off authorization form. The Employer agrees to transmit BACPAC deductions to the Treasurer of BACPAC, and shall be accompanied by a list of the names of those employees for who BACPAC deductions have been made and the amount deducted for each employee.

**D.**        The Union shall indemnify and hold harmless the Employer, its officers, agents, employees and representatives from and against any and all loss, suits, actions or claims of any charter arising from the implementation or performance of the dues check-off practices set forth in this Article.

# ARTICLE IX
## JOINTLY TRUSTED FUNDS

**Section 1:**  In addition to the wages and other payments herein provided for, the employer agrees to pay the specified contributions as outlined in **Schedule A** to the following designated Trust Funds covered within each Zone.

**TEXAS, LOUISIANA & NEW MEXICO, LOCAL #01 PARTICIPATING, PENSION TRUST FUNDS:**

**A.**        **Bricklayers and Trowel Trades International Pension Fund.**
The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated July 1972.

**B.**        **Bricklayers Gulf Coast Pension Trust Fund**
The payments required above shall be made to this Local Pension Fund, which was established under an Agreement and Declaration of Trust, dated 01, January 1968.

**C.**        **Bricklayers (Former) Local 1, Louisiana Pension Fund**
The payments required above shall be made to this Local Pension Fund, which was established under an Agreement and Declaration of Trust, dated 01, May 1964.

**D.**        **Affiliated Louisiana Bricklayers & Trowel Trades (Former Local 4) Pension Trust Fund**
The payments required above shall be made to this Local Pension Fund, which was established under an Agreement and Declaration of Trust, dated July 1969.

**TEXAS, LOUISIANA & NEW MEXICO, LOCAL #01 PARTICIPATING, HEALTH & WELFARE FUNDS:**

**E.**        **Bricklayers and Allied Craftworkers International Health Fund**
The payment required above shall be made to the Bricklayers and Allied Craftworkers International Health Fund which was established under an Agreement and Declaration of Trust dated, 21, August 1990.

**F.**        **Bricklayers I.U. Local 05, Oklahoma Health and Welfare Fund**
The payment required above shall be made to the Bricklayers and Allied Craftworkers International Health Fund which was established under an Agreement and Declaration of Trust dated, 05, August 1971.

**G.**        **Affiliated Louisiana Bricklayers & Trowel Trades (Former) Local 4, Health & Welfare Trust Fund**
The payment required above shall be made to the Bricklayers and Allied Craftworkers International Health Fund which was established under an Agreement and Declaration of Trust dated, 25, May 1971.

**TEXAS, LOUISIANA AND NEW MEXICO ADDITIONAL PARTICIPATING TRUST FUNDS:**

**H.**        **BAC-SAV**
Optional employee contribution only [401(k)]

*1.)*        The employer hereby agrees to participate in BAC-SAV - The Bricklayers and Trowel Trades International Retirement Savings Plan (the plan) on behalf of all employees represented for purpose of collective bargaining under this Agreement and other employees as permitted under the Plan.

*2.)*        Effective May 16, 2000, the Employer will make or cause to be made pre-tax employees' salary deferral election, subject to compliance with ERISA and the relevant tax code provisions. The Employer will forward the withheld sum to International Union Collection Service or its successors at such time and in such form and manner as required pursuant to the Plan and Declaration of Trust and requirements of law. Each employee shall have the opportunity to change the amount of wages so differed at intervals specified in the Plan and Declaration of Trust.

*3.)*        The International Union Collection Service must receive all [401-K] contribution payments made on behalf of any employee, no later than the fifteenth day (15th) of the following month.

**I.**        **International Masonry Institute**

*1.)*        The masonry industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising, and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in a regional/international system.

*2.)*      In order to properly finance IMI programs, the ultimate objective is to provide, through collective bargaining, contributions equal to three percent of total hourly wage and benefits package; however, this figure is a goal that can only be reached in stages over a period of time.

*3.)*      As contributions from this geographical area increase IMI will be able to devote a portion of those monies to advertising and promotion, research and development, apprenticeship and training and labor/management relations programs directed specifically to this area.

*4.)*      In this Agreement, the parties intend to take a first step toward the overall objective, by establishing a realistic level of support for IMI. With these principles in mind, the parties agree on the contributions to IMI as outlined in **Schedule A** of this Agreement.

**J.**      **Bricklayers & Allied Craftworkers Local 13 Joint Apprentice Training Committee (Beaumont, TX)**

*1.)*      The payments required above shall be made to the Bricklayers & Allied Craftworkers Local 13 Joint Apprentice Training Committee, which was established May 21, 1946.

**K.**      **Wichita Falls Joint Apprentice & Training Committee**

*1.)*      The payments required above shall be made to the Wichita Falls Joint Apprentice & Training Committee Trust Fund, which was established under an Agreement and Declaration of Trust, dated November 1, 1978

**L.**      **Allied Craftworkers Joint Apprentice & Training Committee (Dallas/ Fort Worth, TX)**

*1.)*      The payments required above shall be made to the Allied Craftworkers Joint Apprentice & Training Committee Trust Fund, which was established under an Agreement and Declaration of Trust, dated October 10, 1991.

**M.**      **Affiliated Louisiana Bricklayers and Trowel Trades (Former Local 4) Educational Trust Fund (Lake Charles, LA)**

*1.)*      The payments required above shall be made to the Affiliated Louisiana and Trowel Trades educational Trust Fund.

**N.**      **BAC FLEX· BAC Flexible Benefits Plan**

*1.)*      The employer hereby agrees to participate in BAC-FLEX - The Bricklayers and Allied Craftworkers Flexible Benefits Plan (the plan) on behalf of all employees represented for purpose of collective bargaining under this Agreement and other employees as permitted under the plan.

*2.)*      Effective May 16, 2000, the Employer will contribute $0.00 (0%) for each hour or portion therefore, for which a covered employee receives pay, to BAC-FLEX - The Bricklayers and Allied Craftworkers Flexible Benefits Plan (the plan). If employees elect to contribute additional amounts out of their own pay, the Employer, upon appropriate employee authorization, will make or cause to be made payroll reductions and / or deductions from such employees' wages, subject to compliance with ERISA and the relevant tax code provisions, and will forward the withheld sum together with the employer contributions to the International Union Collection Service or it's successor by the fifteenth (15th) day of the following month, at such time and manner as required pursuant to the Plan instruments and requirements of law.

**O.**      **New Mexico & West Texas Health & Welfare Trust Fund (New Mexico Only)**

*1.)*      The payments required above shall be made to the New Mexico & West Texas Health & Welfare Trust Fund, which was established under an Agreement and Declaration of Trust, dated January 1, 1975.

**P.**      **New Mexico Bricklayers & Allied Craftworkers Joint Apprentice & Training  Committee (New Mexico Only)**

*1.)*      The payments required above shall be made to the New Mexico Bricklayers & Allied Craftworkers Vacation Trust Fund, which was established under an Agreement and Declaration of Trust, dated November 1, 1978.

**Q.**      **Build New Mexico**

*1.)*      The contribution to the Build New Mexico shall be listed in "Zone 15" for each hour or portion thereof, for which a covered employee receives pay.

*2.)*      This program is supported by an equal per hour contribution from the Contractor and an equal per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

*3.)*      The payments required above shall be made to Build New Mexico, which was established under an Agreement and Declaration of Trust, dated November 1, 1988.

**Section 2:**      The Employer hereby agrees to be bound by and to all the above stated Agreements and Declarations of Trusts, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trust.

**Section 3:**      The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

**Section 4:**      For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this Article.

BTX 0360

wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section 1 of this Article. Any employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged in full costs of such audit.

**Section 7:**    If the Employer fails to make any contribution specified in this Article, within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

**Section 8:**    Employers agree to furnish a copy of the monthly Fringe Benefit Report, supplied by the International Union of Bricklayers and Allied Craftworkers to the Administrator of the Funds and to the office of Local #01 Texas, Louisiana & New Mexico.

**Section 9:**    The Union reserves the option to require the Employers to divert any portion of the agreed wages to any of the Jointly Trusted Funds (Pension, Health & Welfare, IMI, BAC-SAV, BAC-FLEX) or to Dues Check-Off by giving thirty (30) days prior written notice to all Employers who are a party to this Agreement. When an employee makes a voluntary assignment of wages to the Union, it shall be withheld by the Employer and remitted to the Union/International Union by the 15th day of the following month. Employers' agrees to comply with specific dates and amounts.

**Section 10:**    In the event the Union should determine to reduce or completely discontinue the contributions to any of the Jointly Trusted Funds, those monies previously allocated to such funds shall be added to the current basic hourly wage rate after thirty (30) days _prior_ written notice has been given to all Employers who are a party to this Agreement; and in accordance with the following method:

*1.)*    70% of the contribution will be immediately added to the basic hourly wage rate for all projects that have been bid and/or currently under contract; and the Employers will be obligated to furnish the Union with a list of all such projects.

*2.)*    The full contribution will be added to the basic hourly wage rate for all projects bid and awarded subsequent to the above referenced notification.

# ARTICLE X
## WORKING CONDITIONS

**Section 1:**    REPORTING TIME

**A.**    Employees shall not lose time for signing up for work on the job and shall be paid from time of reporting to the employer or their representative for work. Employees shall not lose time during normal working hours for the erection or stocking of scaffolds or by moving from one job to another job, during work hours.

**B.**    Employees reporting for work at their regular time, unless notified not to report for work, shall receive two (2) hours show up time. The foregoing shall not be applicable for reasons of inclement weather or an act of God.

**C.**    When the employer request from the union, one or more employees to report for work, if the employee is not put to work after reporting at the regular established start time, the employer shall pay the employee two (2) hours show up time. The foregoing shall not be applicable for reasons of inclement weather or an act of God.

**D.**    Employees shall not be required to remain on the job site through inclement weather unless requested to do so by the employer. All such time shall be paid for until said employees are dismissed for the day.

**E.**    Any employee called out by the employer to perform emergency repair work shall receive a minimum of four (4) hours pay.

**F.**    Employees shall be at the employer's designated work area for the full duration of their day or shift. Check in and check out shall be on employee's own time.

**Section 2:**    HOURS OF WORK

**A.**    Normal Work Hours and Make up Days:

Normal eight (8) or ten (10) hour workdays must be established by the employer on the following basis:

*1.)*    Eight (8) Hour Work Day: The standard work day shall consist of eight (8) hours of work. The normal starting time of said day shall be between 6:30 a.m. and 8:00 a.m. The normal quitting time shall be eight and one-half (8 ½) hours after the starting time. A thirty (30) minute unpaid lunch period shall occur in the middle of the day. The standard work week shall consist of five standard work days commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

Provided a job runs at least five (5) days, and in the event the job is shut down for four (4) hours or more in one workday, Monday through Friday, due to inclement weather at the job site, then, at the option of the Employer, Saturday of the same work week may be worked as a make up day.

The Saturday make up day will be considered identical in start and stop times as a regular eight (8) hour work day, even if some overtime is incurred. Make up days will be on a voluntary basis and the employer agrees not to

discharge any employee or discriminate against any employee who declines to work on a make up day. In no event shall the employer attempt to circumvent the overtime provisions of this agreement by employing supplemental labor for make up day work.

2.)    **Ten (10) Hour Work Day:** Provided a job runs at least four (4) working days, a ten (10) hour per day four (4) days per week work schedule may be utilized. Ten (10) hours worked per day shall constitute a day's work, forty (40) hours per week, Monday through Thursday, inclusive, shall constitute a week's work.
The normal starting time of said day shall be between 6:30 a.m. and 8:00 a.m. The normal quitting time shall be ten and one half (10 ½) hours after the starting time. A thirty (30) minute unpaid lunch period shall occur in the middle of the day. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union. Provided a job runs at least four (4) working days, and in the event the job is shut down for eight (8) hours or more in one workday, Monday through Thursday, due to inclement weather at the job site, then, at the option of the Employer, Friday of the same work week may be worked as a make up day. The Friday make up day will be considered identical in start and stop times as a regular eight (8) hour work day, (even if some overtime is incurred), or should ten (10) hours be lost due to inclement weather it would be worked as all other ten (10) hour work days. Make up days will be on a voluntary basis and the employer agrees not to discharge any employee or discriminate against any employee who declines to work on a make up day. In no event shall the employer attempt to circumvent the overtime provisions of this agreement by employing supplemental labor for make up day work.

3.)    **Twelve (12) Hour Work Day:** The normal starting time of said day shall be between 6:30 a.m. and 8:00 a.m. The normal quitting time shall be twelve and one half (12 ½) hours after the starting time. A thirty (30) minute unpaid lunch period shall occur after the first four (4) or five (5) hours worked. A thirty (30) minute paid meal shall occur after the second four (4) or five (5) hours worked. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

B.    **Shift Work Hours:**
Shifts may be established by the employer and continued as long as necessary. Shifts shall be established by the employer on the following basis:

1.)    **Two Eight (8) Hour Shifts:**
a.)    The normal starting time of the first shift shall be between 6:30 a.m. and 8:00 a.m.
The normal quitting time of the first shift shall be eight and one-half (8 ½) hours after the starting time. The normal quitting time of the second shift shall be eight and one-half (8 ½) hours after the starting time of that shift. A thirty (30) minute unpaid lunch period shall occur in the middle of each shift. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.
b.)    Employees on the second shift shall receive a wage differential as set forth in **Schedule B** of this Agreement.

2.)    **Three Eight (8) Hour Shifts:**
a.)    The normal starting time of the first shift shall be between 6:30 a.m. and 8:00 a.m.
The normal quitting time of the first shift shall be eight and one-half (8 ½) hours after the starting time. The normal quitting time of the second shift shall be eight (8) hours after the starting time of that shift. The normal quitting time of the third shift shall be seven and one-half (7 ½) hours after the starting time of that shift. A thirty (30) minute paid lunch period shall occur in the middle of the second and third shifts. The pay for a full shift on each of the three shifts shall be eight (8) times the applicable straight time wage rate. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

3.)    **Two Ten (10) Hour Shifts:**
a).    The normal starting time of the first shift shall be between 6:30 a.m. and 8:00 a.m.
The normal quitting time of the first shift shall be ten and one-half (10 ½) hours after the starting time. The normal quitting time of the second shift shall be ten and one-half (10 ½) hours after the starting time of that shift. A thirty (30) minute unpaid lunch period shall occur in the middle of each shift. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.
b.)    Employees on the second shift shall receive a wage differential as set forth in **Schedule B** of this Agreement.

4.)    **Two Twelve (12) Hour Shifts:**
a.)    The normal starting time of the first shift shall be between 6:30 a.m. and 8:00 a.m.
The normal quitting time of the first shift shall be twelve (12) hours after the starting time. The normal quitting time of the second shift shall be twelve (12) hours after the starting time of that shift. A thirty (30) minute paid meal period shall occur after the first four (4) or Five (5) hours worked. A thirty (30) minute paid meal period shall occur after the second four (4) or five (5) hours worked. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.
b.)    Employees on the second shift shall receive a wage differential as set forth in **Schedule B** of this Agreement.
On all types of shift work, when the weekend arrives, the overtime wage rates shall be in effect beginning with the first or day shift on Saturday and ending forty-eight (48) hours after starting time of said first shift. When a holiday arrives, the overtime wage rates shall be in effect beginning with the first or day shift and ending twenty-four (24) hours after starting time of said first shift.

CTX 0360

The parties to this Agreement recognized the desirability and in some cases absolute necessity of coordinating the shifts to be worked with the other trades involved on the project and the customer's work schedule. When shift schedules, other than those described above (See Appendix 1.) are required by the customer, they may be established by mutual consent of the Employer and the Union.

## Section 3:    OVERTIME

**A.**    All time worked in excess of the normal established workday or make up day shall be paid at the rate of one and one half (1 ½) times the hourly base wage rate in effect.

**B.**    Time worked on Saturdays shall be paid for at the rate of one and one half (1 ½) times the hourly base wage rate in effect.

**C.**    All time worked on Sundays or holidays shall be paid for at the rate of double (2 times) the hourly base wage rate in effect.

**D.**    When Employees are required to work more than two (2) hours of unscheduled overtime after normal quitting time; and for each four (4) hours of unscheduled overtime thereafter, the Employer will furnish a meal or an allowance for each meal as set forth in **Schedule B** of this Agreement. In either case, sufficient time will be allowed to eat such meal at the designated two (2) and four (4) hour intervals.

## Section 4:    HOLIDAYS

**A.**    The following holidays will be observed:        New Year's Day, Memorial Day, July Fourth, Labor Day, Thanksgiving Day, Friday after Thanksgiving and Christmas Day.

**B.**    Should any of the above holidays fall on Saturday, it shall be observed on the Friday before.

**C.**    Should any of the above holidays fall on Sunday, it shall be observed on the Monday after.

## Section 5:    PAY DAY

**A.**    Pay day shall be Wednesday, Thursday, or Friday. Sufficient time will be allowed employers to prepare payrolls not to exceed three (3) days, except in case of an emergency.

**B.**    All wages received by the employees covered under this agreement, shall be United States legal tender or may be paid by payroll check provided the employer establishes necessary identification for cashing payroll checks within a reasonable distance of the job.

**C.**    A check stub, pay envelope or receipt listing the employer's name, employee name, date, and hours worked, gross and net amount paid, dues check off deductions, withholding tax, social security deductions, plus any other deductions from wages shall be provided to each employee when paid.

**D.**    Any employee failing to receive his or her pay on a regular pay day by quitting time shall receive one and one-half (1-1/2) times the applicable straight time wage rate in effect, until their pay is received.

**E.**    When any employee notifies the employer of their intention to quit, the employee shall be paid in full by the end of the next regular working day at the employer's office. The employee may request that his or her pay be mailed to them and such request shall be granted.

**F.**    An employee being laid off shall be given his or her final pay in full for all hours of employment one-half hour before layoff.

**G.**    In the event a job ends or an employee is laid off on a weekend, holiday, or any time outside normal business hours, the employee shall receive his or her pay on the next normal business day during normal business hours at the Employer's office. The employee may request that his or her pay be mailed to them and such request shall be granted.

**H.**    When an employee is discharged by the employer he or she shall be paid in full immediately. Should the employee be required to wait to receive his or her pay after being discharged, said employee shall receive one and one-half (1-1/2) times the applicable straight time wage rate in effect, until their pay is received.

**I.**    All employees shall receive a written termination slip as proof of discharge, if requested by the employee.

## Section 6:    SAFETY, HEALTH, AND SUBSTANCE IMPAIRMENT

**A.**    The union and the employer agree that safety of the work place is of paramount importance and the employer and the union agree to abide by all appropriate federal, state, and local safety laws, codes, and regulations and any and all safety regulations established by the employer, owner, or their representative that may be required for the safe performance of work at a particular jobsite.

**B.**    All work, including but not limited to all construction equipment used therefore, shall be in compliance and performed in accordance with Federal Occupational Safety and Health Act (OSHA), including all amendments and supplements thereto.

**C.**    In an effort to enhance the safety of the work place, when testing of employees for drug, alcohol, or other substance impairment may be required by the owner or employer, the testing program shall be performed by recognized physicians and/or laboratories and shall comply with any and all federal, state, and local standards. The cost of such testing program shall be borne by the employer.

PTX 0360

**D.**    Pre-employment testing will be performed on the employees own time and a certification of drug free status will be issued for a one (1) year duration. For random, post accident / incident, and for cause testing, employees shall be paid for the time necessary to take the test. No time shall be paid to an employee whose test results are positive.

**E.**    The Employer shall indemnify and hold harmless the Union, its officers, agents, employees, and representatives from and against any and all loss, suits, actions or claims of any character by any employee or group of employees covered under this agreement arising from drug, alcohol, or substance impairment testing practices set forth in this Article.

**F.**    Completion of generic safety training, as required by owner safety rules and regulations, will be attended to on the employees own time. Those employees who successfully complete the training course will be issued a certificate of completion which will be valid for a one (1) year period. Efforts will be made to establish and conduct safety training programs by the local union whenever possible.

**G.**    The employer shall furnish a covered, portable drinking water container with spigot and individual sanitary cups on each job. The employer shall also provide sufficient ice to keep water cool.

**H.**    Members will be provided with a face mask by the employer when pouring insulation such as peralite, zonalite, etc.

**I.**    Masonry saws shall have belt and blade guards and the employer shall furnish safety glasses, elbow length gloves, apron, and hearing protection.

**J.**    Where dry saws are operated in a manner that the dust from it would be injurious to the health of the operator or other employees, a blower fan or dust collector or filtered dust mask shall be provided by the employer.

**K.**    At the employer's option, all second or successive issues of safety related equipment furnished by the employer may be charged to the employee when issued to them and full credit will be given to the employee upon return of said equipment. Lost or deliberately damaged safety equipment will be paid for by the employee.

**Section 7:    USE OF SCAFFOLDS**

**A.**    Building of scaffolds for masonry work shall be supervised by the job site foreman. The work shall not be built to exceed four (4) feet, eight (8) inches for scaffold height except where there are overhead obstructions. Scaffold walk boards shall be six (6) inches lower than wall.

**B.**    A ladder shall be provided by the employer for the convenience of employees to reach the place they are working whether above or below ground. A ladder will be provided for every one hundred (100) feet of horizontal scaffold and shall extend at least three (3) feet above floor or scaffold. It shall be securely tied to scaffold and remain in place as long as a member is working thereon.

**C.**    The two (2) inside 2" x 10" planks of all scaffolds shall be kept clean of all material in order that the employee may have room to stand while working. The walk planks shall be no farther away from the wall than approximately four (4) inches. Where projections or pilasters occur which would cause the scaffold to exceed four inches, the scaffold must be built around the obstructions.

**D.**    Elevated mortar boards or tables shall not be less than twenty (20) inches high. All masonry material used by the employee must be stacked in piles.

**E.**    Employees shall not reach down more than a reasonable, safe distance between floors, beams, or other overhand type of construction.

**F.**    The flooring on all scaffolds shall be not less than four (4) feet, six (6) inches wide and no outside hanger shall be less than two (2) inches by four (4) inches.

**G.**    The scaffold for the topping out of the inside walls or partition or operations where the floors are in place, shall be built so as to allow six (6) foot headroom from scaffold to ceiling.

**H.**    Where foot scaffolds are necessary, they must be built of not less than two (2) planks, each 2" x 10" wide, and materials shall be elevated so that the employee need not get up and down for same. Foot scaffolds shall be clear of materials at all times.

**I.**    The flooring on any put-lock or pole scaffold shall be not less than four (4) feet, six (6) inches wide, and no outside hangers shall be less than 2 x 8 inches.

**Section 8:    USE OF LINES**

**A.**    No line shall be raised until all brick or block are laid to the line, the twig set, and all brick are racked or walled for the next course.

**B.**    No mortar shall be spread ahead of the line, unless the craftsmen working on the wall agree that it will not interfere with another craftsmens' work.

**C.**    No line shall be put up more than one course at a time, except where sill or other obstructions may occur and cannot be avoided.

**D.**    All walls of two (2) units or more in thickness shall have a line raised on both sides.

**Section 9:    GENERAL PROVISIONS AND PROHIBITIONS**

**A.**    All employers must submit to the union a copy of their Insurance Certificate and their Employers Identification Number.

**B.**    On jobs of sufficient size, employers shall furnish a suitable dressing room or tool house, with lock and key, heating when necessary, and ample seating capacity for the use of employees. Necessary sanitary conveniences shall be provided for employees on all work. Dressing room and toilet facilities shall be kept clean at all times.

**C.**    In case of fire or theft on a job at any time the employer shall not be responsible for the loss of employee's tools or personal belongings.

**D.**    On buildings over six (6) stories in height, where an elevator is not provided or available to carry employees up and down, to and from their work, the employees shall not be required to leave the tool house until work time.

**E.**    Speed leads, corner poles, or dead men may be used on all work where applicable.

**F.**    The employer shall provide proper lighting when needed for employees to perform their work.

**G.**    On all buildings where block units are used, two (2) employees working as a team shall be used in placing blocks weighing thirty-five (35) pounds or more on the wall. However, an employee shall have the option to work by their self.

**Section 10:**

**A.**    No employee shall be recognized on strike for any personal grievance with his employer. Employers and their representatives shall be prohibited from discharging or discriminating against any employee for lawful union activities. Personal grievances must be presented to the union and referred to the Joint Arbitration Board without permitting such grievance to interfere in any way with the progress or prosecution of the work.

**B.**    There shall be no prescribed rules, customs, orders or limitations permitted by either the employees or the employers that will govern the productivity of masonry materials, other than, what is defined in this agreement.

**C.**    When an employer brings employees into the jurisdiction of the specified unions' and pays a higher rate of journeyman's wages than provided for in this agreement, the same rate shall be paid to all journeyman employees who are working on the job.

# ARTICLE XI
## SUBCONTRACTING

The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

# ARTICLE XII
## GRIEVANCE PROCEDURES

**A.**    The parties to this Agreement shall establish a Joint Arbitration Board consisting of three representatives selected by the Employers and three representatives selected by the Local Union, to resolve disputes over the interpretation and application of this Agreement. The Board shall meet at least once a month, or on call, to settle complaints, abuses or grievances. It is further agreed that should occasion require any alterations or amendments to this Agreement, the party desiring such alterations or amendments shall submit same in writing to the Board. The Employer and Union representatives at a session shall have an equal number of votes on all matters coming before the Joint Arbitration Board, regardless of the number of Employer or Union representatives present at a session.

**B.**    It is specifically agreed that any controversy arising out of this Agreement involving the interpretation of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the Union or to the attention of the Union by the Employer within five (5) days after the alleged violation is committed or discovered.

**C.**    Grievances shall be handled in the following manner:

*1.)*    The grievance shall be referred to the jobsite Union steward and to the jobsite employer's representative for adjustment.

*2.)*    If the grievance cannot be settled pursuant to paragraph 1 of this Section, the grievance shall be referred on the following day to the officer primarily responsible for the day to day affairs of the Union or said officer's designee and the Employer.

*3.)*    If the grievance cannot be settled pursuant to paragraph 2 of this Section within three (3) working days excluding weekends and holidays, the grievance shall be submitted within forty-eight (48) hours to the Joint Arbitration Board for consideration and settlement.

*4.)*    If the Joint Arbitration Board cannot reach a satisfactory settlement within five (5) working days, not including weekends and holidays, following a referral of the grievance to the Board, it shall immediately select an impartial arbitrator to review with the Board all evidence submitted relating to the dispute and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an impartial arbitrator, the impartial arbitrator shall be selected from a panel of

Service. All expenses of the impartial party shall be borne equally by the Employer and the Union. The decision reached by the Joint Arbitration Board with the assistance of the impartial arbitrator shall be final and binding upon all parties.

# ARTICLE XIII
## TRAVELING CONTRACTORS

**A.    TRAVELING CONTRACTORS.**    When the Employer has any work specified in Section 1 (a) of this Article to be performed outside of the area covered by this Agreement and within the area covered by a standard Collective Bargaining Agreement of another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the standard Agreement in effect in the job site area with respect to all employees, wherever hired, who perform such work, except as provided in the next sentence of this paragraph.  Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article XVIII of this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement.  The Employer shall in all other matters be governed by the provisions established in the jobsite local Agreement.  If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Section 1 (a) of this Article, the full terms and conditions of this Agreement shall apply.

# ARTICLE XIV
## NO STRIKE / NO LOCKOUT

It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XI have been exhausted and then only in the event a party fails or refuses to abide by a final decision.  This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other contributions that have been established through bona fide collective bargaining.

# ARTICLE XV
## SEPARABILITY AND SAVINGS PROVISIONS

**A.**    It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules, and regulations made pursuant thereto.  If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this agreement shall remain in force and effect.

**B.**    In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate Collective Bargaining Negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law to be in effect during the period of invalidity or restraint.

# ARTICLE XVI
## MOST FAVORED NATIONS

It is understood and mutually agreed that in the event the Union enters into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the masonry market or certain geographic areas, those same terms and conditions of employment will be made available to the Employer on the specific projects, particular segments of the masonry market or in those geographic areas covered.  The only exceptions to this provision are (1) those initial agreements that are signed with newly organized employers to provide a bridge between those rates which are initially established and those which prevail for signatory contractors in the masonry market in which the newly organized contractor is going to operate, (2) that whenever the Employer is bidding or negotiating for a masonry project where competing work forces are determined to be the likely contractor for the project, the Union will consider, special conditions for that project which may be necessary to secure the work opportunities on that project for signatory Employers and employees represented by the Union.  Any special conditions of employment or wage and contribution rates granted under the provisions of this Agreement for a specific project or geographic area will be available to any and all other Employers signatory to this Agreement for that project or geographic area upon their request, (3) any instance in which a job is bid to be completed during a particular contract period, and the job is delayed for reasons beyond the contractor's control so that it falls into a later contract period, and the Union agrees to perform the work under the wage rates in effect when the work was expected to be done.  Should any question arise as to the meaning and application of this provision, either party may file with the other a written complaint.  Such complaint will be initiated at Step 3 of the grievance procedure set forth in Section C of Article IX of this Agreement (referred to Joint Arbitration Board), and shall be processed in accordance with the procedure for the handling of grievance and the final and binding arbitration of disputes.

# ARTICLE XVII
## HARMONY AND COOPERATION

**A.    MANAGEMENT RIGHTS.** The Contractor retains full and exclusive authority for the management of its operations, except as expressly restricted by this Agreement. By way of illustration only, and not limited either as to authority or types of authority retained, this authority shall include, but not limited to the following: The Contractor shall direct his working forces at his sole prerogative, including but not limited to, hiring, promotion, transfer, lay-off, or discharge for just cause, provided there shall be no discrimination against any employee by reason of Union activity that does not interfere with the proper performance of his work. Rules, customs, or practices will not be permitted or observed that limit or restrict production, or limit or restrict the working efforts of employees. The Contractor shall schedule work, and will determine when overtime will be worked; provided that employees will not be required to work under any conditions that are injurious to their health or safety, as provided in Federal or State laws and regulations governing construction.

**B.    PROBLEMS OF MUTUAL INTEREST.** The representatives of the Union and of the Contractor shall meet on problems of mutual interest.

**C.    LIST OF CONTRACTS.** Within 48 hours after receipt of written request from the Union, a Contractor shall furnish the Union a list of all contracts and subcontracts entered into for a specific job.

**D.    PRE-EMPLOYMENT CONFERENCES.** At the request of either party, or prior to commencing work on a project, representatives of the Union and Contractor shall hold a pre-employment conference.

# ARTICLE XVIII
## HOURLY RATES, INSURANCE, PAYROLL DEDUCTIONS

**1.    HOURLY RATES.** The hourly wage rates and clarifications listed in Schedule A, Zones 1-15 shall apply on all work performed under the terms of this Agreement within the jurisdiction of the Union.

**2.    INSURANCE.** The Contractor shall carry Workmen's Compensation Insurance on all employees covered by this Agreement.

**3.    PAYROLL DEDUCTIONS.** The Contractor shall give to each employee with each check a statement itemizing the employee's gross amount earned, hours worked, Social Security Tax, Withholding Taxes and all other deductions.

# ARTICLE XIX
## GENERAL UNDERSTANDING

**A.**    The parties hereto agree to cooperate in meeting conditions peculiar to the job in which they may be engaged. The Union will at all times meet and confer with the Employer, and similarly, the Employer will at all times meet and confer with the Union respecting any questions or misunderstandings that may arise under the performance of this Agreement.

**B.**    This Agreement constitutes the entire agreement between the parties, and any local or area practices or working rules which may be in conflict with the provisions contained in this Agreement shall be subordinated to this Agreement.

**C.**    The Employer agrees that if it has not previously done so, it will, upon the Union's submission of evidence of majority status among its employees in the bargaining unit described herein, voluntarily recognize the Union as the exclusive representative as defined in Section 8 (a) of the National Labor Relations Act, as amended, of all employees within that bargaining unit on all present and future job sites within the jurisdiction of the Union. The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

**D.**    We the undersigned Employer, hereby become signatory to this Agreement and agree to abide by the full terms and conditions of this Agreement effective as of this date.

14

PTX 0360

## SCHEDULE A

**Schedule A** defines the territorial jurisdiction, dues check-off amount, basic hourly wage rates and fringe benefit contributions for the counties and parishes referred to as ZONES covered by this Agreement.

### WORKING DUES CHECK-OFF
#### (See Article VIII - Working Dues Check-Off)

The Employer agrees to deduct from the basic hourly wage rate for each hour paid to Employees working under this Agreement the total dues check-off amount referred to within each ZONE.

### BASIC HOURLY WAGE RATE

The Employer agrees to pay to each Employee working under this Agreement the basic hourly wage rate established for the Employee classification work is performed under within each ZONE.

### FRINGE BENEFIT CONTRIBUTIONS
#### (See ARTICLE IX - JOINTLY TRUSTED FUNDS)

The Employer agrees to pay on behalf of each Employee working under this Agreement the established hourly fringe benefit contribution rates applicable to the appropriate Trust Funds covered within each ZONE.


## SCHEDULE B

**A.** **General Foreman** - shall be paid a minimum of $2.50 above the applicable journeyman scale within the ZONE work is performed.

**B.** **Foreman** - shall be paid a minimum of $1.50 above the applicable journeyman scale within the ZONE work is performed.

**C.** **Sub-Foreman or Layout Man** -- shall be paid a minimum of $1.00 above journeyman scale within the ZONE work is performed.

**D.** **Shift Differential** - shall be $0.65 above the applicable straight time journeyman wage rate within the ZONE work is performed.

**E.** **Overtime Meals** - shall be paid at $8.00 per meal.

**F.** **Travel** - Any member of Local #01 Texas, Louisiana, and New Mexico traveling one-hundred twenty-five (125) miles or more from their residence or from the employers' corporate office, (which every the employer decides) shall be paid the minimum of thirty dollars ($30.00) a day to help pay expenses incurred. If the employer decides to spend the minimum of thirty dollars ($30.00), in an indirect way, then the employer has met their obligation.

**ZONE 1**
**COVERS AREAS OF – AMARILLO AND LUBBOCK, TEXAS**                    FTX 0360

**Counties of:**  Andrews, Armstrong, Bailey, Borden, Briscoe,
Carson, Castro, Childress, Cochran, Collingsworth, Cottle,
Crane, Crosby, Dallam, Dawson, Deaf Smith, Dickens, Donley,
Ector, Floyd, Gaines, Garza, Glasscock, Gray, Hale, Hall,
Hansford, Hartley, Hemphill, Hockley, Howard, Hutchinson,
Kent, King, Lamb, Lipscomb, Lubbock, Lynn, Martin, Midland,
Mitchell, Moore, Motley, Ochiltree, Oldham, Parmer, Pecos,
Potter, Randall, Roberts, Scurry, Sherman, Swisher, Terry,
Terrell, Upton, Wheeler, and Yoakum.
The dues check off amount, basic hourly wage rate, and
fringe benefits contributions within this **ZONE** for the
following journeyman classifications of Brick Masonry,
Stone Masonry, Artificial Masonry, and Special Categories
are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | **1ST YEAR** | **8/1/2003** |
|---|---|---|
| The basic hourly wage rate..............................................$ |  | 17.94 |
| Bricklayers & Trowel Trades International Pension Fund..........$ |  | 1.00 |
| Bricklayers & Allied Craftsmen International Health Fund...$ |  | 4.10 |
| International Masonry Institute Fund................................$ |  | 0.20 |
|  | Total..............$ | 23.24 |

|  | **2ND YEAR** | **7/1/2004** |
|---|---|---|
| The basic hourly wage rate..............................................$ |  |  |
| Bricklayers and Trowel Trades International Pension Fund...$ |  |  |
| Bricklayers & Allied Craftsmen International Health Fund...$ |  |  |
| International Masonry Institute Fund................................$ | **wage** |  |
|  | Total..............$ | **opener** |

|  | **3RD YEAR** | **7/1/2005** |
|---|---|---|
| The basic hourly wage rate..............................................$ |  |  |
| Bricklayers and Trowel Trades International Pension Fund...$ |  |  |
| Bricklayers & Allied Craftsmen International Health Fund...$ |  |  |
| International Masonry Institute Fund................................$ | **wage** |  |
|  | Total......$ | **opener** |

PTX 0360

**ZONE 2**
**COVERS AREAS OF – WICHITA FALLS, TEXAS**

**Counties of:**   Archer, Baylor, Clay, Foard, Hardeman, Haskell,
Knox, Throckmorton, Wichita, Wilbarger, and Young.
The dues check off amount, basic hourly wage rate, and fringe
benefits contributions within this **ZONE** for the following
journeyman classifications of Brick Masonry, Stone Masonry,
Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | 1ST YEAR 5/1/2003 |
|---|---|
| The basic hourly wage rate | $ 20.60 |
| Bricklayers and Trowel Trades International Pension Fund | $ 1.50 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.20 |
| International Masonry Institute Fund | $ 0.05 |
| Wichita Falls J.A.T.C. | $ 0.10 |
| **Total** | **$ 26.45** |

|  | 2ND YEAR 5/1/2004 |
|---|---|
| The basic hourly wage rate | $ 21.60 |
| Bricklayers and Trowel Trades International Pension Fund | $ 1.50 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.20 |
| International Masonry Institute Fund | $ 0.05 |
| Wichita Falls J.A.T.C. | $ 0.10 |
| **Total** | **$ 27.45** |

|  | 3RD YEAR 5/1/2005 |
|---|---|
| The basic hourly wage rate | $ 22.60 |
| Bricklayers and Trowel Trades International Pension Fund | $ 1.50 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.20 |
| International Masonry Institute Fund | $ 0.05 |
| Wichita Falls J.A.T.C. | $ 0.10 |
| **Total** | **$ 28.45** |

PTX 0360

**ZONE 3**
**COVERS AREAS OF — ABILENE, AND WACO, TEXAS**

**Counties of:**   Bell, Bosque, Brown, Callahan, Coke, Coleman, Comanche, Concho, Coryell, Crockett, Eatland, Falls, Fisher, Freestone, Hamilton, Henderson, Hill, Irion, Jones, Kimble, Limestone, McCulloch, McLennan, Menard, Milam, Mills, Navarro, Nolan, Reagan, Runnels, Schleicher, Shackelford, Sterling, Stephens, Stonewall, Sutton, Taylor, and Tom Greene.
The dues check off amount, basic hourly wage rate, and fringe benefits contributions within this **ZONE** for the following journeyman classifications of Brick Masonry, Stone Masonry, Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | **1ST YEAR   8/1/2003** |
|---|---|
| The basic hourly wage rate | $  18.45 |
| Bricklayers and Trowel Trades International Pension Fund | $   1.00 |
| Bricklayers & Allied Craftsmen International Health Fund | $   4.10 |
| International Masonry Institute Fund | $   0.49 |
| **Total** | **$  24.04** |

|  | **2ND YEAR   7/1/2004** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ **wage** |
| **Total** | **$ opener** |

|  | **3RD YEAR   7/1/2005** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ **wage** |
| **Total** | **$ opener** |

ZONE 4
COVERS AREAS OF — AUSTIN, TEXAS

**Counties of:**   Bastrop, Blanco, Burnet, Caldwell, Hays,
Lampasas, Lee, Llano, Mason, San Saba, Travis, and Williamson.
The dues check off amount, basic hourly wage rate, and fringe
benefits contributions within this **ZONE** for the following
journeyman classifications of Brick Masonry, Stone Masonry,
Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | 1ST YEAR 8/1/2003 |
|---|---|
| The basic hourly wage rate | $ 19.45 |
| Bricklayers and Trowel Trades International Pension Fund | $  1.25 |
| Bricklayers & Allied Craftsmen International Health Fund | $  4.10 |
| International Masonry Institute Fund | $  0.45 |
| Total | $ 25.25 |

|  | 2ND YEAR 7/1/2004 |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ **wage** |
| Total | $ **opener** |

|  | 3RD YEAR 7/1/2005 |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ **wage** |
| Total | $ **opener** |

**ZONE 5**
**COVERS AREAS OF — SAN ANTONIO, TEXAS**

**Counties of:**    Atascosa, Bandera, Bexar, Comal, Dimmit, Edwards,
Frio, Gillespie, Gonzales, Guadalupe, Karnes, Kendall, Kerr,
Kinney, La Salle, Maverick, Medina, Real, Uvalde, Val Verde,
Webb, Wilson, and Zavala.
The dues check off amount, basic hourly wage rate, and fringe
benefits contributions within this **ZONE** for the following
journeyman classifications of Brick Masonry, Stone Masonry,
Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

**1ST YEAR  8/1/2003**
The basic hourly wage rate...........................................$ 18.00
Bricklayers and Trowel Trades International Pension Fund...$  0.75
Bricklayers & Allied Craftsmen International Health Fund...$  4.10
International Masonry Institute Fund...........................$  0.24
                                         Total......$ 23.09

**2ND YEAR  7/1/2004**
The basic hourly wage rate...........................................$
Bricklayers and Trowel Trades International Pension Fund...$
Bricklayers & Allied Craftsmen International Health Fund...$
International Masonry Institute Fund...........................$ **wage**
                                         Total......$ **opener**

**3RD YEAR  7/1/2005**
The basic hourly wage rate...........................................$
Bricklayers and Trowel Trades International Pension Fund...$
Bricklayers & Allied Craftsmen International Health Fund...$
International Masonry Institute Fund...........................$ **wage**
                                         Total...$ **opener**

ZONE 6
COVERS AREAS OF – CORPUS CHRISTI, TEXAS

BTX 0360

**Counties of:**  Aransas, Bee, Brooks, Calhoun, Cameron, De Witt, Duval, Goliad, Hidalgo, Jackson, Jim Hogg, Jim Wells, Kenedy, Kleberg, Lavaca, Live Oak, McMullen, Nueces, Refugio, San Patricio, Starr, Victoria, Willacy, and Zapata.
The dues check off amount, basic hourly wage rate, and fringe benefits contributions within this **ZONE** for the following journeyman classifications of Brick Masonry, Stone Masonry, Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | 1ST YEAR 8/1/2003 |
|---|---|
| The basic hourly wage rate | $ 17.95 |
| Bricklayers and Trowel Trades International Pension Fund | $ 0.70 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.10 |
| International Masonry Institute Fund | $ 0.20 |
| **Total** | **$ 22.95** |

|  | 2ND YEAR 7/1/2004 |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ wage |
| **Total** | **$ opener** |

|  | 3RD YEAR 7/1/2005 |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ wage |
| **Total** | **$ opener** |

5 TX 0360

**ZONE 7**
**COVERS AREAS OF — HOUSTON, GALVESTON, TEXAS**

**Counties of:**   Angelina, Austin, Brazoria, Brazos, Burleson,
Colorado, Fayette, Fort Bend, Galveston, Grimes, Harris, Houston,
Leon, Madison, Matagorda, Montgomery, Polk, Robertson, San
Jacinto, Trinity, Walker, Waller, Washington, and Wharton.
The dues check off amount, basic hourly wage rate, and fringe
benefits contributions within this **ZONE** for the following
journeyman classifications of Brick Masonry, Stone Masonry,
Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

**1ST YEAR 8/1/2003**

| | |
|---|---|
| The basic hourly wage rate | $ 17.30 |
| Bricklayers and Trowel Trades International Pension Fund | $ 0.70 |
| Bricklayers Gulf Coast Pension Fund | $ 0.60 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.10 |
| International Masonry Institute Fund | $ 0.24 |
| **Total** | **$ 22.94** |

**2nd YEAR 7/1/2004**

| | |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers Gulf Coast Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ **wage** |
| **Total** | **$ opener** |

**3rd YEAR 7/1/2005**

| | |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers Gulf Coast Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ **wage** |
| **Total** | **$ opener** |

TX 0360

**ZONE 8**
**COVERS AREAS OF - BEAUMONT, TEXAS**

**Counties of:**    Chambers, Hardin, Jasper, Jefferson, Liberty,
Newton, Orange, Sabine, San Augustine, and Tyler.
The dues check off amount, basic hourly wage rate, and fringe
benefits contributions within this **ZONE** for the following
journeyman classifications of Brick Masonry, Stone Masonry,
Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages
### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | **1ST YEAR  8/1/2003** |
|---|---|
| The basic hourly wage rate | $ 18.89 |
| Bricklayers and Trowel Trades International Pension Fund | $  0.70 |
| Bricklayers Gulf Coast Pension Fund | $  0.55 |
| Bricklayers & Allied Craftsmen International Health Fund | $  4.10 |
| Bricklayers (Former) Local #13 App. Training Trust Fund | $  0.18 |
| International Masonry Institute Fund | $  0.05 |
| Total | $ 24.47 |

|  | **2ND YEAR  7/1/2004** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers Gulf Coast Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| Bricklayers (Former) Local #13 App. Training Trust Fund | $ |
| International Masonry Institute Fund | $ wage |
| Total | $ opener |

|  | **3RD YEAR  7/1/2005** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers Gulf Coast Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| Bricklayers (Former) Local #13 App. Training Trust Fund | $ |
| International Masonry Institute Fund | $ wage |
| Total | $ opener |

DTX 0360

## ZONE 9
## COVERS AREAS OF – DALLAS, FORT WORTH, TEXAS

**Counties of:**    Collin, Cooke, Dallas, Denton, Ellis, Erath, Fannin, Grayson, Hood, Hunt, Jack, Johnson, Kaufman, Montague, Palo Pinto, Parker, Rockwall, Somervell, Tarrant, Van Zandt, and Wise.

The dues check off amount, basic hourly wage rate, and fringe benefits contributions within this **ZONE** for the following journeyman classifications of Brick Masonry, Stone Masonry, Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS
(Per Amendment No. 1)

|  | 1ST YEAR 8/1/2003 |
|---|---|
| The basic hourly wage rate | $ 18.40 |
| Bricklayers and Trowel Trades International Pension Fund | $ 1.15 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.10 |
| Apprentice and Training Fund | $ 0.08 |
| **Total** | **$ 23.73** |

|  | 2ND YEAR 7/1/2004 |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| Apprentice and Training Fund | $ wage |
| **Total** | **$ opener** |

|  | 3RD YEAR 7/1/2005 |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| Apprentice and Training Fund | $ wage |
| **Total** | **$ opener** |

BTX 0360

**ZONE 10**
**COVERS AREAS OF – LONGVIEW, TEXAS**

**Counties of:** Anderson, Bowie, Camp, Cass, Cherokee, Delta, Franklin, Gregg, Harrison, Hopkins, Lamar, Marion, Morris, Nacogdoches, Panola, Rains, Red River, Rusk, Shelby, Smith, Titus, Upshur, and Wood.

The dues check off amount, basic hourly wage rate, and fringe benefits contributions within this **ZONE** for the following journeyman classifications of Brick Masonry, Stone Masonry, Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | **1ST YEAR 8/1/2003** |
|---|---|
| The basic hourly wage rate | $ 18.45 |
| Bricklayers and Trowel Trades International Pension Fund | $ 1.00 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.10 |
| International Masonry Institute Fund | $ 0.09 |
| Total | $ 23.64 |

|  | **2ND YEAR 7/1/2004** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ wage |
| Total | $ opener |

|  | **3RD YEAR 7/1/2005** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ wage |
| Total | $ opener |

BTX 0360

## ZONE 11
## COVERS AREAS OF – SHREVEPORT, MONROE, NATCHITOCHES, LOUISIANA

**Parishes of:** Bienville, Bossier, Caddo, Caldwell, Claiborne, De Soto, East Carroll, Franklin, Grant, Jackson, La Salle, Lincoln, Madison, Morehouse, Natchitoches, Ouachita, Rapids, Red River, Richland, Sabine, Tensas, Union, Webster, West Carroll, and Winn.

The dues check off amount, basic hourly wage rate, and fringe benefits contributions within this **ZONE** for the following journeyman classifications of Brick Masonry, Stone Masonry, Artificial Masonry, and Special Categories are as follows:

### WORKING DUES CHECK-OFF

Total working dues check off 3% of gross wages

### APPRENTICE HOURLY WAGE RATES

Apprentice = % of Journeyman Wage Rate (See page 4 for %)

### BASIC HOURLY WAGE RATE
### FRINGE BENEFIT CONTRIBUTIONS

|  | **1ST YEAR  8/1/2003** |
|---|---|
| The basic hourly wage rate | $ 16.35 |
| Bricklayers and Trowel Trades International Pension Fund | $  0.95 |
| Bricklayers & Allied Craftsmen International Health Fund | $  4.10 |
| International Masonry Institute Fund | $  0.25 |
| **Total** | **$ 21.65** |

|  | **1ST YEAR  11/1/2003** |
|---|---|
| The basic hourly wage rate | $ 16.85 |
| Bricklayers and Trowel Trades International Pension Fund | $  0.95 |
| Bricklayers & Allied Craftsmen International Health Fund | $  4.10 |
| International Masonry Institute Fund | $  0.25 |
| **Total** | **$ 22.15** |

|  | **2ND YEAR  7/1/2004** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ wage |
| **Total** | **$ opener** |

|  | **3RD YEAR  7/1/2005** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers and Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ wage |
| **Total** | **$ opener** |

TX 0360

**ZONE 12**
**COVERS AREAS OF – LAKE CHARLES, ALEXANDRIA, LOUISIANA**

**Parishes of:**    Acadia, Allen, Avoyelles, Beauregard, Calcasieu,
Cameron, Jefferson Davis, and Vernon.
The dues check off amount, basic hourly wage rate, and fringe
benefits contributions within this **ZONE** for the following
journeyman classifications of Brick Masonry, Stone Masonry,
Artificial Masonry, and Special Categories are as follows:
**WORKING DUES CHECK-OFF**
Total working dues check off 3% of gross wages
**APPRENTICE HOURLY WAGE RATES**
Apprentice = % of Journeyman Wage Rate (See page 4 for %)
**BASIC HOURLY WAGE RATE**
**FRINGE BENEFIT CONTRIBUTIONS**

                                                      **1ST YEAR**  8/1/2003
The basic hourly wage rate.............................................................$ 18.30
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Pension Trust Fund..............................$  1.25
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Health & Welfare Trust Fund...........$  3.00
(Former) Local 4, Educational Fund................................$  0.05
International Masonry Institute Fund.............................$  0.05
                                           Total.........$ 22.65
                                                      **1ST YEAR** 11/1/2003
The basic hourly wage rate.............................................................$ 18.80
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Pension Trust Fund..............................$  1.25
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Health & Welfare Trust Fund...........$  3.00
(Former) Local 4, Educational Fund................................$  0.05
International Masonry Institute Fund.............................$  0.05
                                           Total.....$ 23.15


                                                      **2ND YEAR**   7/1/2004
The basic hourly wage rate.............................................................$
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Pension Trust Fund..............................$
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Health & Welfare Trust Fund...........$
(Former) Local 4, Educational Fund................................$
International Masonry Institute Fund.............................$ wage
                                           Total...........$ opener


                                                      **3RD YEAR**   7/1/2004
The basic hourly wage rate.............................................................$
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Pension Trust Fund..............................$
Affiliated Louisiana Bricklayers & Trowel Trades
(Former) Local 4 Health & Welfare Trust Fund...........$
(Former) Local 4, Educational Fund................................$
International Masonry Institute Fund.............................$ wage
                                           Total...........$ opener

DTX 0360

**ZONE 13**
**COVERS AREAS OF – BATON ROUGE, LAFAYETTE, OPELOUSAS, NEW IBERIA, AND BOGALUSA, LOUISIANA**

**Parishes of:**   Ascension, Assumption, Avoyelles, Catahoula, Concordia, East Baton Rouge, East Feliciana, Evangeline, Grant, Iberia, Iberville, Lafayette, La Salle, Livingston, Point Coupee, St. Landry, St. Martin, St. Mary, St. Tammany, Tandipahoa, Vermillion, Washington, West Baton Rouge, and West Feliciana. The dues check off amount, basic hourly wage rate, and fringe benefits contributions within this **ZONE** for the following journeyman classifications of Brick Masonry, Stone Masonry, Artificial Masonry, and Special Categories are as follows:

**WORKING DUES CHECK-OFF**
Total working dues check off 3% of gross wages
**APPRENTICE HOURLY WAGE RATES**
Apprentice = % of Journeyman Wage Rate (See page 4 for %)
**BASIC HOURLY WAGE RATE**
**FRINGE BENEFIT CONTRIBUTIONS**

|  | **1ST YEAR 8/1/2003** |
|---|---|
| The basic hourly wage rate | $ 16.21 |
| Bricklayers & Trowel Trades International Pension Fund | $ 1.60 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.10 |
| International Masonry Institute Fund | $ 0.31 |
| Total | $ 22.22 |

|  | **1ST YEAR 11/1/2003** |
|---|---|
| The basic hourly wage rate | $ 16.71 |
| Bricklayers & Trowel Trades International Pension Fund | $ 1.60 |
| Bricklayers & Allied Craftsmen International Health Fund | $ 4.10 |
| International Masonry Institute Fund | $ 0.31 |
| Total | $ 22.72 |

|  | **2ND YEAR 7/1/2004** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers & Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ |
| Total | $ wage opener |

|  | **3RD YEAR 7/1/2005** |
|---|---|
| The basic hourly wage rate | $ |
| Bricklayers & Trowel Trades International Pension Fund | $ |
| Bricklayers & Allied Craftsmen International Health Fund | $ |
| International Masonry Institute Fund | $ |
| Total | $ wage opener |

JTX 0360

**ZONE 14**
**COVERS AREAS OF — NEW ORLEANS, LOUISIANA**
**Parishes of:**    Jefferson, Lafourche, Orleans Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, and Terrebonne.
The dues check off amount, basic hourly wage rate, and fringe benefits contributions within this **ZONE** for the following journeyman classifications of Brick Masonry, Stone Masonry, Artificial Masonry, and Special Categories are as follows:

**WORKING DUES CHECK-OFF**
Total working dues check off 3% of gross wages
**APPRENTICE HOURLY WAGE RATES**
Apprentice = % of Journeyman Wage Rate (See page 4 for %)
**BASIC HOURLY WAGE RATE**
**FRINGE BENEFIT CONTRIBUTIONS**

| | **1ST YEAR  8/1/2003** |
|---|---|
| The basic hourly wage rate.................................................. | $ 16.70 |
| Bricklayers and Trowel Trades International Pension Fund..$ | 0.25 |
| Bricklayers (Former) Local 1 Louisiana Pension Fund............$ | 0.80 |
| BAC International Health Fund........................................$ | 4.10 |
| International Masonry Institute Fund.............................$ | 0.15 |
| Total....$ | 22.00 |

| | **1ST YEAR  11/1/2003** |
|---|---|
| The basic hourly wage rate.................................................. | $ 17.20 |
| Bricklayers and Trowel Trades International Pension Fund..$ | 0.25 |
| Bricklayers (Former) Local 1 Louisiana Pension Fund............$ | 0.80 |
| BAC International Health Fund........................................$ | 4.10 |
| International Masonry Institute Fund.............................$ | 0.15 |
| Total..$ | 22.50 |

| | **2ND YEAR  7/1/2004** |
|---|---|
| The basic hourly wage rate.................................................. | $ |
| Bricklayers and Trowel Trades International Pension Fund..$ | |
| Bricklayers (Former) Local 1 Louisiana Pension Fund............$ | |
| BAC International Health Fund........................................$ | |
| International Masonry Institute Fund.............................$ | wage |
| Total......$ | opener |

| | **3RD YEAR  7/1/2005** |
|---|---|
| The basic hourly wage rate.................................................. | $ |
| Bricklayers and Trowel Trades International Pension Fund..$ | |
| Bricklayers (Former) Local 1 Louisiana Pension Fund............$ | |
| BAC International Health Fund........................................$ | |
| International Masonry Institute Fund.............................$ | wage |
| Total..$ | opener |

## ZONE 15 NEW MEXICO

**Section A.**    The hourly wage rates for all employees performing work covered under this
Agreement shall be as follows:

### COMMERCIAL, & HEAVY HIGHWAY - BRICK, BLOCK, STONE, PCC, & MARBLE

|            | 4/1/03  | 4/1/04  |
|------------|---------|---------|
| Journeyman | $20.53  | $20.53  |
| Saw Man    | $21.03  | $21.03  |
| Sub-Foreman| $21.28  | $21.28  |
| Foreman    | $23.53  | $23.53  |

| Apprenticeship | 1st Period | 2nd Period | 3rd Period | 4th Period | 5th Period | 6th Period | 7th Period | 8th Period |
|----------------|------------|------------|------------|------------|------------|------------|------------|------------|
| 4/1/2003       | $10.27     | $11.29     | $12.32     | $13.34     | $14.37     | $15.40     | $16.42     | $17.45     |
| 4/1/2004       | $10.27     | $11.29     | $12.32     | $13.34     | $14.37     | $15.40     | $16.42     | $17.45     |

### Industrial - Refractory Work

|            | 4/1/03  | 4/1/04  |
|------------|---------|---------|
| Journeyman | $20.78  | $20.78  |
| Foreman    | $23.53  | $23.53  |

| Apprenticeship | 1st Period | 2nd Period | 3rd Period | 4th Period | 5th Period | 6th Period | 7th Period | 8th Period |
|----------------|------------|------------|------------|------------|------------|------------|------------|------------|
| 4/1/2003       | $10.39     | $11.43     | $12.47     | $13.51     | $14.55     | $15.59     | $16.62     | $17.66     |
| 4/1/2004       | $10.39     | $11.43     | $12.47     | $13.51     | $14.55     | $15.59     | $16.62     | $17.66     |

### Commercial, & Heavy Highway - Tile, Terrazzo, Mosaics, Cement & Plaster

|            | 4/1/03  | 4/1/04  |
|------------|---------|---------|
| Journeyman | $17.35  | $17.35  |
| Foreman    | $20.35  | $20.35  |

| Apprenticeship | 1st Period | 2nd Period | 3rd Period | 4th Period | 5th Period | 6th Period | 7th Period | 8th Period |
|----------------|------------|------------|------------|------------|------------|------------|------------|------------|
| 4/1/2003       | $8.68      | $9.54      | $10.41     | $11.28     | $12.15     | $13.01     | $13.88     | $14.75     |
| 4/1/2004       | $8.68      | $9.54      | $10.41     | $11.28     | $12.15     | $13.01     | $13.88     | $14.75     |

### Commercial & Heavy Highway Tile Finisher, & Marble Finisher

|           | 4/1/03  | 4/1/04  |
|-----------|---------|---------|
| Finisher 1| $17.35  | $17.35  |
| Finisher 2| $20.35  | $20.35  |

**CONTRIBUTIONS SCHEDULE:**                         **PAYROLL**
**DEDUCTIONS:**

|                       | 4/01/03 | 4/01/04 |
|-----------------------|---------|---------|
| Health & Welfare      | $1.47   | $ 1.72  |
| Int'l T.T. Pension    | 2.50    | 2.65    |
| IMI Apprentice training. | .54  | .54     |
| NMBAC/ JATC           | .00     | .10     |
| Build New Mexico      | .02     | .02     |
| **TOTAL**             | **$4.53** | **$5.03** |

Dues check off   3% of gross Wages
BAC-PAC                  $ .01

# MASTER COMMERCIAL

# SIGNATURE PAGE

This Amended Agreement is approved and entered into this _____ day of _____, 2003, by:

CONTRACTOR (_____)

### AND

THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL
UNION No. 1 TEXAS, LOUISIANA, AND NEW MEXICO, STATE OF NEW MEXICO ONLY

CONTRACTOR:                                    FOR THE UNION:

_____        BRICKLAYERS & ALLIED CRAFTWORKERS

NAME OF CONTRACTOR              LOCAL # 01 TEXAS, LOUISIANA, NEW MEXICO

_____        _____

Name & Title of Owner                Randy Kelly – IU Receiving Officer

_____        _____

Date                                            Date

31

TX   0360

# MASTER COMMERCIAL
## SIGNATURE PAGE

This Amended Agreement is approved and entered into this _4_ day of _July_ , 2003, by:

CONTRACTOR ( _Templton Mazonry Ce INC_

AND

.THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL
UNION No. 1 TEXAS, LOUISIANA, AND NEW MEXICO, STATE OF NEW MEXICO ONLY

CONTRACTOR:                                    FOR THE UNION:

_Templton Masonry_                             BRICKLAYERS & ALLIED CRAFTWORKERS

NAME OF CONTRACTOR                             LOCAL # 01 TEXAS, LOUISIANA, NEW MEXICO

_Bo Templton Pres_                             _Randy L Kelly – I.U. Receiving Officer_

Name & Title of Owner                          Randy Kelly – IU Receiving Officer

_7-4-03_                                        _7/1/2003_
Date                                            Date

31



RECEIVED
SEP 2 8 2004
COLLECTIVE BARGAINING SERVICES